Filed: June 27, 2001

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

_____

Nos. 00-2272(L)
(11-CA-17354, et al.)

_____

Mid-Mountain Foods, Incorporated,

Petitioner,

versus

National Labor Relations Board,

Respondent.

_____

O R D E R

_____

The court amends its opinion filed June 15, 2001, as follows:

On page 2, second full paragraph of text, line 3 -- a comma is inserted between "Mid-Mountain" and "jointly."

On page 5, first full paragraph, line 3 -- the word "the" between "that" and "Mid-Mountain's" is deleted.

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MID-MOUNTAIN FOODS,
INCORPORATED,
Petitioner,

v.

No. 00-2272

NATIONAL LABOR RELATIONS BOARD,
Respondent.

NATIONAL LABOR RELATIONS BOARD,
Petitioner,

v.

No. 00-2458

MID-MOUNTAIN FOODS,
INCORPORATED,
Respondent.

On Petition for Review and Cross-Application for
Enforcement of an Order of the National Labor Relations Board.
(11-CA-17354, 11-CA-17379, 11-CA-17398, 11-CA-17414,
11-CA-17479, 11-CA-17496-2)

Argued: May 8, 2001

Decided: June 15, 2001

Before WILKINSON, Chief Judge, and WILKINS and LUTTIG,
Circuit Judges.

_____

Petition for review denied and cross-application for enforcement
granted by unpublished opinion. Judge Luttig wrote the opinion, in
which Chief Judge Wilkinson and Judge Wilkins joined.

## COUNSEL

**ARGUED:** Ronald I. Tisch, LITTLER MENDELSON, P.C., Washington, D.C., for Mid-Mountain. Anna Leigh Francis, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Board. **ON BRIEF:** Jason M. Branciforte, LITTLER MENDELSON, P.C., Washington, D.C.; Mark M. Lawson, Eric W. Reecher, Regina W. Calabro, ELLIOTT, LAWSON & POMRENKE, P.C., Bristol, Virginia, for Mid-Mountain. Leonard R. Page, Acting General Counsel, John H. Ferguson, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Fred L. Cornnell, Supervisory Attorney, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Board.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

LUTTIG, Circuit Judge:

The National Labor Relations Board (the "Board") held that Mid-Mountain Foods, Inc. ("Mid-Mountain") committed multiple violations of the National Labor Relations Act ("NLRA") in taking disciplinary action against seven employees. For the reasons that follow, we deny Mid-Mountain's petition for review and grant the Board's cross-application for enforcement.

I.

The United Food and Commercial Workers International Union, Local 400; the International Brotherhood of Teamsters; and John Widener, an employee of Mid-Mountain, jointly filed a complaint against Mid-Mountain alleging multiple violations of the NLRA. After a full hearing, the administrative law judge ("ALJ") found that

2

Mid-Mountain violated the NLRA in taking disciplinary action against several employees. J.A. 463-80.

After the parties filed objections to the ALJ's findings, the Board adopted the ALJ's opinion with only minor modifications. The Board ordered that Mid-Mountain "offer immediate and full reinstatement" to three discharged employees, John Widener, Randall Perdue, and Ronnie Brooks. J.A. 460. It further ordered that any references to the unlawful disciplinary action against Widener, Perdue, Brooks, Daniel Hounshell, Steve Warner, Coy Wolfe, or Larry Nunley be removed from Mid-Mountain's files within 14 days from the date of the order. J.A. 460.

Mid-Mountain petitions for review of the Board's decision and order, arguing that the Board's decision was not supported by substantial evidence that Mid-Mountain violated the NLRA with respect to each of the seven employees. J.A. 481. The Board has filed a cross-application for enforcement of its order. J.A. 483-84.

II.

"This court enforces Board orders whenever substantial evidence exists to support the Board's factual findings." USF Red Star, Inc. v. NLRB, 230 F.3d 102, 106 (4th Cir. 2000). In holding that Mid-Mountain violated sections 8(a)(1),[1] 8(a)(3),[2] and 8(a)(4)[3] of the NLRA, the ALJ applied the standard in Wright Line Inc., 251 N.L.R.B. 1083, 1980 WL 12312 (1980), enforced, 662 F.2d 899 (1st Cir. 1981), "for resolving discrimination cases which turn on the

_____

[1] "It shall be an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title." 29 U.S.C. § 158(a)(1).

[2] "It shall be an unfair labor practice for an employer . . . by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization . . . ." 29 U.S.C. § 158(a)(3).

[3] "It shall be an unfair labor practice for an employer . . . to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this subchapter." 29 U.S.C. § 159(a)(4).

3

employer's motivation," NLRB v. CWI of Maryland, Inc., 127 F.3d 319, 330 (4th Cir. 1997). As we have previously stated, an employer's motivation is a question of fact "`which the expertise of the Board is peculiarly suited to determine.'" Medeco Security Locks, Inc. v. NLRB, 142 F.3d 733, 742 (4th Cir. 1998) (quoting FPC Holdings, Inc. v. NLRB, 64 F.3d 935, 942 (4th Cir. 1995)).

Under the Wright Line test, the NLRB General Counsel first bears the burden of establishing a prima facie case of discrimination, which requires that three elements be proven by a preponderance of the evidence: "(1) that the employee was engaged in protected activity, (2) that the employer was aware of the activity, and (3) that the activity was a substantial or motivating reason for the employer's action." Id. An employer may still escape liability even though a prima face case has been established if it can prove -- as an affirmative defense -- that it "`nonetheless would have taken the same employment action for legitimate reasons.'" Id. (quoting Ultrasystems Western Constructors, Inc. v. NLRB, 18 F.3d 251, 257 (4th Cir. 1994)). If the Board believes, however, that the legitimate reasons proffered by the employer are "non-existent or pretextual," then the employer's defense fails. USF Red Star, Inc. v. NLRB, 230 F.3d 102, 106 (4th Cir. 2000).

A.

The Board held that Mid-Mountain violated sections 8(a)(1) and 8(a)(3) of the NLRA when it suspended and subsequently discharged John Widener, a truck driver for the company. The ALJ found that the company's undisputed knowledge that Widener was a Teamsters supporter combined with the fact that Widener's suspension and discharge occurred just days after supervisors threatened both the union and Widener, established a prima facie case of discrimination. J.A. 136 (describing statements by the Human Resources Director of Mid-Mountain that "there would never be a Union" at the company and that union representation was "no good for the people."); J.A. 35 (recounting statements by Widener's supervisor that one of Widener's co-workers should tell Widener that "his days were numbered" and that the company was "going to weed out the trouble makers.").

Mid-Mountain argued that it discharged Widener for the legitimate, non-discriminatory reason that Widener failed to report an accident

4

involving his assigned truck, as required by company policy. The ALJ rejected Mid-Mountain's proffered reason as pretextual, finding that there was credible testimony in the record that Mid-Mountain knew that the damage to the truck was not "new," and that the company's practice was that only "new" damage had to be reported. J.A. 467 & n.6. The ALJ further found pretext from the company's failure to discipline any other employees for the damage, despite its knowledge that the damage was present when other employees drove the truck prior to Widener. J.A. 467-68. Finally, the ALJ concluded that one of Widener's supervisors exaggerated the damage to the truck in order to manufacture a reason for Widener's discharge. J.A. 468.

B.

The Board held that Mid-Mountain violated sections 8(a)(1) and 8(a)(3) of the NLRA when it terminated Randall Perdue, also a truck driver for the company. The ALJ found that Mid-Mountain's knowledge that Perdue was an active Teamsters supporter, who served on an in-house organizing committee and distributed Teamsters Literature to his co-workers, coupled with the company's threats directed at Widener and the union, which occurred just two weeks prior to Perdue's discharge, were sufficient to establish a prima facie case. J.A. 468-69; see also W.F. Bolin Co. v. NLRB, 70 F.3d 863, 871 (6th Cir. 1995) ("Discriminatory motivation may reasonably be inferred from a variety of factors, such as the company's expressed hostility towards unionization combined with knowledge of the employees' union activities . . . .").

Mid-Mountain claimed that it discharged Perdue because he falsified a trip report by improperly claiming 30 minutes of overtime work (as a result of traffic delays) after a regular delivery run to a store in Sevierville, Tennessee. J.A. 470. The ALJ credited Perdue's and another employee's testimony that they encountered traffic on their way to the Sevierville store, as well as Perdue's testimony indicating that the times on his trip report were, in fact, accurate. J.A. 470. In contrast, the ALJ did not find the conflicting testimony of Perdue's supervisors, who followed him on his delivery run that day, credible, based on their "demeanor" and "the full record." J.A. 469. Thus, the

5

ALJ concluded that the reason proffered by Mid-Mountain was pretextual.**4**

C.

The Board held that Mid-Mountain violated sections 8(a)(1) and 8(a)(3) of the NLRA when it terminated Ronnie Brooks, an aisle forklift operator. Again, the ALJ found that a prima facie case had been established by the suspicious timing of the personnel action -- namely, that the termination occurred only seven days after the company learned that Brooks had signed a union authorization card. J.A. 473.

Mid-Mountain responded that it discharged Brooks because he exceeded the maximum allowable disability leave of 183 days, and because his forklift job had been eliminated. The ALJ determined that Mid-Mountain's proffered reasons were pretextual, finding that Brooks asked for only a small amount of additional leave -- only 13 days -- and that, though the company invited him to submit a request for additional leave, it then arbitrarily refused to grant the request. J.A. 459, 473. In reviewing the ALJ's decision, the Board added that Mid-Mountain failed to explain why it "invited Brooks to submit a request for an extension in the first place, knowing that the request would be summarily denied," and why it did not act on Brooks' extension request until after the 183-day disability period had expired, "thus depriving Brooks of an opportunity to seek clearance to return to work before the time had expired." J.A. 459.

Accordingly, the Board ultimately concluded that "[g]iven the timing of the discharge, the inconsistency between inviting a request for an extension and then firing Brooks when he made one, and the failure to show a pattern of rejecting similar limited-duration extension requests in the past, we find that [Mid-Mountain] failed to prove its

_____

**4** Furthermore, the ALJ found it persuasive both with regard to the prima facie case and to pretext that the company did not even discipline another driver, a non-union supporter who followed a similar route as Perdue that day, for claiming almost three hours of overtime, while the company took the extraordinary measure of terminating Perdue, who claimed only 30 minutes of overtime. J.A. 469.

6

defense" and therefore that it "unlawfully discharged Brooks in retaliation for his union activity." J.A. 459.

D.

The Board held that Mid-Mountain also violated sections 8(a)(1) and 8(a)(3) of the NLRA when it issued a verbal warning to Daniel Hounshell, a forklift operator for the company. The ALJ found that the General Counsel had proven a prima facie case because the company knew that Hounshell was an active supporter of the union, and the warning was issued just shortly after he appeared on the television news wearing a "vote yes" t-shirt at a union meeting. J.A. 473-74.

Mid-Mountain responded that it issued the warning because Hounshell failed to follow directions to speak with Jeff Mahoney, his team leader, prior to leaving on a day that he was assigned to work overtime. The ALJ rejected the company's explanation as pretextual, finding that Hounshell was treated differently than similarly situated employees since "[o]ther employees also failed to check with Mahoney" but were not disciplined at all. J.A. 475.

E.

The Board held that Mid-Mountain violated sections 8(a)(1), 8(a)(3), and 8(a)(4) of the NLRA when it issued a written warning to Coy Wolfe, a forklift driver for the company. The ALJ determined that a prima facie case had been established because Wolfe submitted a statement in support of Hounshell only 11 days prior to receiving his own warning, and because the "action against Wolfe occurred during a period of time when [Mid-Mountain] was very active in unfair labor practice activity." J.A. 478. In addition, the ALJ observed that Tony Lewis, Wolfe's supervisor, "told Wolfe that he should not take the warning personally and that he had not seen Wolfe at any time when Wolfe was not working," indicating that the decision to discipline him may have been motivated not by Wolfe's alleged poor work performance but by union animus. J.A. 478.

Mid-Mountain responded that it issued the warning for the legitimate, non-discriminatory reason that Wolfe failed to properly restock

7

his assigned area. The ALJ rejected the company's proffered reason as pretextual, crediting the testimony of Wolfe's co-worker that there was not an unusually large number of "outs" during the days in question. J.A. 478. In finding pretext, the ALJ also relied heavily on the company's inability to explain why it failed to discipline employees for a similar restocking problem that occurred six months earlier. J.A. 478.

F.

The Board held that Mid-Mountain violated sections 8(a)(1) and 8(a)(3) of the NLRA when it issued a written warning to Larry Nunley, a forklift operator for the company. The ALJ found that the General Counsel had established a prima facie case by adducing evidence that Nunley received his warning only two weeks after serving as a representative for the Teamsters during a Board hearing. J.A. 475. And the evidence further revealed that Nunley's warning came on the heels of several other unlawful actions during the same period, including the company's discharge of Brooks and the written warning issued to Wolfe.

Mid-Mountain claimed that it issued the written warning to Nunley because he misloaded pallets of merchandise, causing the products to be delivered to the wrong store. The ALJ concluded that the company's reason was pretextual, however, because the record established that Mid-Mountain "was not consistent in its practice of disciplining employees for misshipments," in that some employees were not disciplined at all for their infractions and others received only verbal warnings. J.A. 476. As the ALJ noted, one "habitual violator" received only a verbal warning for his numerous misshipments, while Nunley, a first-time violator, received the more serious punishment of a written warning. J.A. 476. Indeed, as the Board concluded in addressing the ALJ's findings regarding Nunley, Mid-Mountain "concede[d] that it ha[d] <u>not</u> invariably issued written warnings for similar infractions," thus undermining its proffered reason for disciplining Nunley in the manner that it did. J.A. 460 (emphasis in original).

G.

The Board held that Mid-Mountain violated sections 8(a)(1), 8(a)(3), and 8(a)(4) of the NLRA when it issued a verbal unexcused

8

absence to Steve Warner, an order selector for the company. In finding that a prima facie case had been established, the ALJ found it significant that the unexcused absence was issued on the same day that Warner was scheduled to testify at a Board hearing. J.A. 477.

Mid-Mountain argued that it issued the verbal unexcused absence because Warner failed to call into work at the correct time to inform his supervisor that he would be absent for the day, as required by the employee handbook. The ALJ rejected the company's reason as pretextual, finding that Warner did call "within the 30-minute timeframe specified" in the employee handbook. J.A. 477. However, an operator placed him on hold for approximately ten minutes, causing him to actually speak with a supervisor more than 30 minutes after the start of his shift though he placed the call within the requisite time window. J.A. 477.

III.

After reviewing the parties' briefs and the applicable law, and having had the benefit of oral argument, we are convinced that the Board reached the correct result and that its decision is supported by substantial evidence. See Mid-Mountain Foods, Inc., 332 NLRB No. 20 (Sept. 21, 2000). Accordingly, we deny Mid-Mountain's petition for review and grant the Board's cross-application for enforcement.

It is so ordered

9